[Civ. No. 1142.    Second Appellate District.—December 31, 1912.]

## LOUIS G. DREYFUS, Appellant, v. JULIA M. RICHARDSON, Respondent.

BROKER'S COMMISSIONS NOT RECOVERABLE—SALE OF PROPERTY OTHER-WISE EFFECTED.—Where a real estate owner, without other consid-eration than the mutual covenants implied in the contract, made plaintiff her sole agent for an indefinite period, though it would pre-vent the making of any other such contract during its existence, yet it *does not confer an exclusive right of sale,* and where a sale was otherwise effected by the owner of the property, no broker's com-missions are recoverable for the sale so effected.

ID.—RIGHT OF OWNER TO REVOKE AGENCY—RIGHT OF SALE WITHOUT EXPRESS REVOCATION.—The owner had the right to revoke the agency at any time before a purchaser was secured, since the agreement did not confer upon the agent an exclusive right of sale, although no other agency could be conferred during its existence; yet the owner may sell the property or accept an offer to sell the same, without express revocation of the agency.

ID.—PROCURING CAUSE OF SALE—NEGOTIATION OF BROKER WITH WIFE—SALE BY HUSBAND TO OWNER—SPECIAL TERMS—CONFLICTING EVI-DENCE.—Where the broker had procured the name of a wife as a proposed purchaser, and the husband subsequently negotiated a sale directly with the owner, upon special terms, which he would not have negotiated through the agency of the broker, the most that can be claimed, in an action by the broker for his commissions, is that the evidence is conflicting as to the procuring cause of the sale.

ID.—PROPOSED PURCHASE—SALE OF MERE OPTION.—The payment by a proposed purchaser of the sum of two thousand dollars, with a pro-viso that if the proposed purchaser does not pay a large proposed purchase price in full, such deposit should be forfeited, without any promise to pay the purchase money, is not a sale of the property, but the sale of a mere option to purchase, which cannot affect the right of the owner to make a different sale of the property on less favorable terms, even though such proposed purchaser might have bought the property on such reduced terms, if known.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial. Samuel E. Crow, Judge.

The facts are stated in the opinion of the court.

Canfield & Starbuck, for Appellant.

John J. Squier, for Respondent.

SHAW, J.—This action was instituted to recover compensation for services alleged to have been rendered by plaintiff for defendant in the sale of certain real estate.

Plaintiff bases his right to recover upon three grounds, each of which as a cause of action is separately stated in the complaint. The first cause of action is based upon an exclusive agency given plaintiff, whereby defendant in writing authorized him to procure a purchaser for certain real estate owned by her, it being alleged therein that plaintiff did procure two persons, to wit: Ellen C. Bothin and A. L. White, each of whom was ready, able, and willing to purchase the property at the price for which it was sold; that while the agreement was in force defendant employed another agent through whom she sold the property to ·said Bothin, all to plaintiff's damage in the reasonable value of the services rendered by him. It is alleged in the second cause of action that plaintiff, at the special instance and request of defendant, rendered services to defendant in procuring for defendant a purchaser for the real estate at the price of thirty-five thousand dollars, to whom and for said price defendant sold said property, in consideration of which she undertook and agreed to pay plaintiff the sum of one thousand seven hundred and fifty dollars, alleged to be the reasonable value of the services performed. The third cause of action is founded upon an allegation that plaintiff, at the special instance and request of defendant, procured one A. L. White who was ready, able, and willing to purchase the real estate at the price of thirty-five thousand dollars, in consideration of which defendant promised to pay plaintiff the sum of one thousand seven hundred and fifty dollars, which was the reasonable value of the services rendered.

At the close of plaintiff's evidence, defendant moved that a nonsuit be entered as to the third cause of action upon the ground that there was no evidence tending to show that A. L. White was ever procured as a purchaser for the property at any price or at all, or that he was at any time ready, able, and willing to buy the property at the price named or at any price whatsoever. This motion was granted.

The jury called to try the case, and to whom the issues joined upon the first and second causes of action were submitted, rendered a verdict for defendant. Plaintiff appeals

20 Cal. App.—51

from the judgment entered in accordance therewith, and from an order of court denying his motion for a new trial.

Appellant's sole contention is that the verdict is not supported by the evidence. The facts which the evidence tends to establish, in so far as necessary to a determination of the question, are substantially as follows: Defendant, who resided in Riverside, Illinois, owned a country place in Santa Barbara County known as "Piranhurst." In October, 1908, she by letter authorized plaintiff to secure a purchaser therefor at the price of seventy-five thousand dollars. About a year later, no sale having been made, plaintiff wrote to defendant suggesting that she reduce the price of the property to forty-five thousand dollars and make him her sole agent for the purpose of securing a purchaser thereof. Defendant, by letter dated October 14, 1909, assented to both propositions, thereby, as claimed by appellant, making him her sole and exclusive agent for the sale of the property. Plaintiff immediately caused to be put up at the place a sign announcing that the property was for sale by him as sole agent, and otherwise advertised the sale of the property, and thence on until the consummation of the sale in March, 1910, endeavored without success to find a purchaser. The fact that the property was on the market was, and had been for a long time, a matter of general knowledge in the community. In February, 1910, while H. E. Bothin and wife were temporarily guests of a hotel in Santa Barbara, his attention was attracted to the property by Mrs. Biddle, likewise a guest of the hotel. Thereupon he and his wife, with Mrs. Biddle, visited the property, and he concluded that he would buy it if it could be had at a satisfactory price, but learning from Mrs. Biddle and the gardener in charge of the place that it was held at forty-five thousand dollars, he abandoned the idea and returned to his home in San Francisco. Later, about March 8th, he and his wife were again in Santa Barbara, when they called upon Mrs. Eaton, an old friend living near Piranhurst, and Mrs. Eaton stating that she would like them for neighbors, asked why they did not buy Piranhurst. The party walked over and inspected the property, at which time Mr. Bothin asked Mrs. Eaton if she knew the defendant well enough to submit an offer of thirty-five thousand dollars, to which she replied that she did not, but spoke of Mr. E. P.

Ripley as an old friend of defendant. Thereupon, by re-
quest of Mr. Bothin, she telephoned Mr. Ripley, without giv-
ing Mr. Bothin's name, asking if he thought defendant would
accept a *bona fide* cash offer of thirty-five thousand dollars
for Piranhurst, and requested him as an old friend of de-
fendant to transmit the offer, which Mr. Ripley did, receiving
from defendant an acceptance of the offer, pursuant to which
through Mr. Ripley the deal was closed.  Plaintiff never saw
or talked with Bothin except on one occasion when, after
Mr. Bothin had learned from Mrs. Biddle that the property
was for sale, and without knowing that plaintiff was the agent
therefor, but by reason only of the convenient location of his
real estate office, he entered and asked for a map of the
Montecito Valley, during which visit, not to exceed two min-
utes in duration, a son of plaintiff mentioned two or three
places in the Montecito, among them Piranhurst, the location
of which on a wall map he endeavored without success to
point out to Bothin, who, disclaiming interest therein, got
his map and, as plaintiff says, "moved out rapidly after
that."  The only offer which plaintiff ever secured was one
made by A. L. White, whereby he offered to give two thou-
sand dollars for an option to purchase the property at the
price of forty thousand dollars, the option to be exercised
in six months or a year; otherwise the two thousand dollars
to be forfeited.  He could not say whether under the circum-
stances he would have paid thirty-five thousand dollars cash
for the property.

Upon these facts appellant claims: 1. That defendants sale
of the property through Mr. Ripley was a breach of her con-
tract with plaintiff for an exclusive agency; 2. That plaintiff
was the procuring cause of the sale to Bothin, the purchaser
of the property; and 3. That defendant's sale of the property
to Bothin without notice to plaintiff prevented plaintiff from
selling it to Mr. White.

We attach little importance to the fact that defendant,
without other consideration than the mutual covenants im-
plied in the contract, made plaintiff her sole agent for an
indefinite period.  She not only had the right to revoke such
agency at any time before he had secured a purchaser, since
the agreement did not purport to give plaintiff an exclusive
right of sale (*Golden Gate Packing Co.* v. *Farmers' Union,*

55 Cal. 606), and conceding that during the existence of the contract she was prohibited thereby from placing the property in the hands ·of another agent with authority to sell the same (*Dole* v. *Sherwood,* 41 Minn. 535, [16 Am. St. Rep. 731, 5 L. R. A. 720, 43 N. W. 569], she as owner, however, could without revoking the contract negotiate the sale thereof or accept an offer to purchase the same. Mr. Ripley was not defendant's agent. As he states, with commendable modesty, he was an employee of the Atchison, Topeka & Santa Fe Ry. Co., and, as he correctly says, was for the time acting merely as a messenger boy in transmitting to defendant an offer of a party to him at the time unknown. He possessed· no authority from defendant to negotiate a sale of the property, or bind her by an agreement for a sale at any price, or even, so far as shown by the record, sign as agent of defendant the papers closing the deal, which act, however, was ratified by her. Had the purchaser hired a boy to deliver his offer to defendant at her hotel, it might with equal reason be claimed that the boy so employed was defendant's agent and the sale made through him. The sale was made directly by defendant in accordance with her right so to do.

The most that can be said in favor of appellant's contention that plaintiff was the procuring cause of the sale, is that the evidence touching the question is conflicting. The first information that the property was for sale was obtained by Bothin from Mrs. Biddle. That he learned of the price at which the property was for sale through Mrs. Biddle or the caretaker, and not from plaintiff, must be accepted as true. After he had thus ascertained through others than plaintiff the facts necessary to enable him to determine whether he wished to acquire the property, he, without knowing of the relation existing between plaintiff and defendant, called at the former's office to procure a road map, when he was for the first time told that plaintiff was agent for this as well as other properties in the vicinity. This information imposed no obligation upon Bothin to deal with defendant through plaintiff; indeed, it fairly appears that Bothin was averse to dealing with plaintiff, and the jury might well have concluded that he would not have made the purchase at all if required to conduct negotiations through plaintiff. While the fact that the property was for sale appears to have been

a subject of conversation between plaintiff and Mrs. Biddle during social calls made by him, it does not appear when, where, from whom, or in what manner Mrs. Biddle first obtained the information imparted to Bothin. Moreover, it conclusively appears that upon learning the price asked for the property he abandoned all idea of buying it. Several weeks thereafter, through the efforts of Mrs. Eaton, an old friend, he was induced to make to defendant direct an offer which she accepted. The facts presented are not unlike those involved in the case of *Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378, [38 Am. Rep. 441], and the recent case of *Cone* v. *Keil,* 18 Cal. App. 675, [124 Pac. 548], both of which constitute authority for holding that under the facts in the case at bar the jury were fully justified in concluding that appellant was not the procuring and efficient cause of the sale made by defendant.

There is not even a conflict of evidence upon the third cause of action, that by defendant's act in selling the property the plaintiff was prevented from selling the same to White, and as to which the court granted defendant's motion for a nonsuit. An option given to a person whereby he agrees to forfeit the sum of two thousand dollars unless he consummates a purchase of the property at a price of forty thousand dollars, is by no means a sale of the property, but the sale of an option to purchase. (*Pehl* v. *Fanton,* 17 Cal. App. 247, [119 Pac. 400].) Moreover, defendant possessed the right to make the sale and did make it before any offer of White was submitted to her; hence, such act being in the exercise of her legal rights it could not be deemed unlawful, even conceding that the offer of White to purchase an option was submitted to defendant—which it was not—and that, as suggested, he would have bought the property if he had known it could be had at the reduced price.

The judgment and order denying plaintiff's motion for a new trial are affirmed.

Allen, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 28, 1913.