[Civ. No. 1435.　Third Appellate District.—December 21, 1915.]

JAMES A. SNOOK et al., Appellants, v. Mrs. ALICE PAGE, Respondent.

CONTRACTS—SALE OF REAL ESTATE—BROKER'S COMMISSION.—A contract authorizing real estate brokers to sell property which makes the brokers the exclusive agents for the sale of the property but does not clothe them with the exclusive right to sell the property, does not entitle the brokers to a commission on a sale made by the owner unaided by the agents.

ID.—RATIFICATION—SALE BY OWNER.—The sale by the owner does not constitute a ratification within the meaning of a contract providing that the owner shall be liable for commission on any sale made by the agents, "or ratified" by the owner during the life of the agreement.

ID.—DEFINITION OF "RATIFICATION."—The terms "adopt" and "ratify" are properly applicable only to contracts by a party acting or assuming to act for another.

APPEAL from a judgment of the Superior Court of Alameda County. William H. Waste, Judge.

The facts are stated in the opinion of the court.

H. B. M. Miller, for Appellants.

Robinson & Robinson, and Harry L. Price, for Respondent.

BURNETT, J.—The appeal is from a judgment of nonsuit in an action for the recovery of $3,630, claimed as commissions for the sale of real property. The contract of agency, as far as necessary to quote, was as follows:

"For value received, and in consideration of the agreement on the part of Snook & Nelson, hereinafter contained, to

perform services for me, I appoint said Snook & Nelson, my agents, and as such authorize them to sell for me within one hundred and twenty days from date hereof, the following described property: . . . Said property may be sold as a whole or in such subdivisions as herein stated, provided that the entire selling price shall not be less than $20,000.

"I hereby empower said Snook & Nelson solely to contract in writing to sell said property with the same effect as if I were present and authorized the same. . . . I agree to pay to Snook & Nelson 5% commission and one-half of price obtained above $20,000, commission on any sale made by them or ratified by me during the life of this agreement, or thereafter if sold to purchaser to whose attention said property was brought through them."

It is not claimed that plaintiffs made a sale or obtained a purchaser, but it is conceded that defendant, without any aid from or consultation with them, made a contract for the sale of the property. It is contended, however, that, under the peculiar terms of their contract, plaintiffs were entitled to a commission if a sale were made by the owner of the property. The proper construction of said contract of agency is, therefore, the desideratum in the case.

The first question of importance, then, is whether the plaintiffs were constituted the *exclusive agents* or were they given the exclusive *right* to sell said property.

If the former only, the rule is well settled that "the owner has the right to sell the same by his own unaided efforts without becoming liable to the broker for commission; that the only effect of such contract is to prevent the owner from placing the property in the hands of another agent and that the owner does not thereby relinquish his right to sell the property himself independently of the broker." (*Golden Gate Packing Co.* v. *Farmers' Union,* 55 Cal. 606; *Waterman* v. *Boltinghouse,* 82 Cal. 659, [23 Pac. 195; *Dreyfus* v. *Richardson,* 20 Cal. App. 800, [130 Pac. 161].)

The right on the part of the owner is an implied condition of the agency, subject to which the agent accepts it, and as his commission is payable only in case of his success in finding a purchaser, the agent takes his chances of the owner himself making the sale. (*Dole* v. *Sherwood,* 41 Minn. 535, [16 Am. St. Rep. 731, 5 L. R. A. 720, 43 N. W. 569].)

The contract herein certainly does not expressly confer upon plaintiffs the exclusive right to sell the property, nor does it in apt terms, if at all, provide for a commission in case the owner himself should dispose of it.

In considering the matter we are to keep in mind that the burden is upon plaintiffs to establish their claim, and that, since the contract was prepared by them, any uncertainty or ambiguity in the terms of the instrument must be resolved in favor of the owner.

With this in view, then, taking the contract "by the four corners," we reach the conclusion that plaintiffs were made the exclusive agents but they were not clothed with the exclusive right to sell the property. The use of the word "solely" can furnish the only pretense of justification for the contention of plaintiffs but, fairly interpreted, the clause imports the meaning of sole agency. If it had been the intention to deprive the owner of the right to sell, or in case of such sale to create a liability for commissions, it could and, no doubt, would have been easily and clearly expressed. With such contingency in view the parties would have provided that "Snook & Nelson should have the exclusive right to sell said property," or, "in case of a sale made by the owner they should be entitled to the same commissions as though made by themselves."

The fact is that by the clause under consideration the parties were not treating of an actual sale, nor did they contemplate any personal participation of the owner in the transaction. The language shows that they were considering a *contract* or agreement for the sale rather than the *sale* itself, and such contract made in the absence of the owner, which, of course, excludes by implication the consideration of what might be done by the owner herself in consummating a transfer of the property. In this respect the contract in *Davis v. Van Tassel,* 107 N. Y. Supp. 910, was apparently more favorable to the broker than the one involved herein, but in that case the court said: "No doubt a contract could be made whereby, in consideration of the efforts made by an agent to sell property, the owner might obligate himself to pay a sum agreed upon if the premises were sold even without the aid of the broker; but it does not seem to me that this is such a contract. The plaintiff is constituted the recognized sole

agent for the property; but there is nothing in the fact of sole agency which in itself gives the broker any right to commissions, unless he is the procuring cause of the sale.''

It was further held that the words: ''And at such times as a sale shall be effected for any of the above mentioned property for the prices named . . . I agree to pay upon the sum of 2 per cent . . . at such times as such sales are effected,'' referred to sales made by such agents and did not include a sale made by the owner himself.

The cases cited by appellants involve an entirely different contract from the one before us.

In *Crane* v. *McCormick*, 92 Cal. 176, [28 Pac. 222], by the terms of the contract the brokers were authorized to sell the property at any time within one year, and it was expressly agreed that the commissions should be paid if the owners withdrew the property from sale or effected a sale in any way during the year. The owners *did* make a sale during the year and, therefore, one of the conditions happened that rendered them liable for the commission.

In *Maze* v. *Gordon*, 96 Cal. 61, [30 Pac. 962], the contract provided that if the owner should, before the expiration of the contract, withdraw the sale of the property, the broker should be entitled to his commission, and it was properly and necessarily held that since the owner did withdraw the property from sale within said time, the broker was entitled to his commission.

In *Kimmell* v. *Skelly*, 130 Cal. 555, [62 Pac. 1067], the owner specifically agreed: ''That a commission is to be paid in the event of a sale of said real property by them or anyone else *including myself*.''

In those cases and some others cited it may be said the principal controversy was as to whether there was sufficient consideration for the agreement. There was no such dispute, as herein, over the interpretation of the contract itself.

The other point, that the owner is liable for the reason that she ratified the sale, is even less tenable. The contention is that she ratified the sale by making it. This would certainly be a strange and extraordinary use of the term ''ratify.'' We must assume that the parties attached to the term its ordinary and usual signification.

In *Norton* v. *Shelby County*, 118 U. S. 425, [30 L. Ed. 178, 6 Sup. Ct. Rep. 1121], it was held: ''To ratify is to give

validity to the act of another and implies that the person or body ratifying has at the time power to do the act ratified."

In *Heyn* v. *O'Hagen,* 60 Mich. 150, [26 N. W. 861], it was said: "To ratify is to give sanction and validity to something done without authority by one individual in behalf of another."

In legal phrase, it usually means to approve or confirm by a principal what has been done by an agent or one assuming to act for another. (*City of Lexington* v. *Lafayette County Bank,* 165 Mo. 671, [65 S. W. 943].)

"The terms 'adopt' and 'ratify' are properly applicable only to contracts by a party acting or assuming to act for another. The latter may then adopt or ratify the act of the former, however unauthorized. To adoption or ratification there must be some relation, actual or assumed, of principal and agent." (*Shepardson* v. *Gillette,* 133 Ind. 125, [31 N. E. 788].)

In 33 Cyc., page 1528, "ratification" is defined as "The act of giving sanction and validity to something done by another; the adoption by a person as binding upon himself of an act done in such relations that he may claim it was done for his benefit although done under such circumstances as would not bind him but for his subsequent assent. The approval by act, word or conduct of that which was attempted (if accomplished) but which was improperly or unauthorizedly performed in the first instance. The confirmation of a previous act done either by the party himself or another. The confirmation of a voidable act. A definition of establish."

As used in the code, the term undoubtedly refers to the act of another. (See secs. 2310 and 2312, Civ. Code.)

The act of defendant in selling the property was, of course, the act of the principal and, moreover, it was an entirely valid act. It was not voidable in any sense, even though it should be held that the brokers were given the exclusive right of sale. For this exclusive right of sale would only mean that they were entitled to their commission no matter how or by whom the sale was effected.

We think the decision was right, and the judgment is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.