[No. 16726.   Department One.   April 3, 1922.]

SUNNYSIDE LAND & INVESTMENT COMPANY, *Appellant,*

v. JOHN D. BERNIER *et al., Respondents.*[1]

BROKERS (4, 19)—CONTRACTS—AUTHORITY—"EXCLUSIVE RIGHT"—
NEGOTIATIONS DIRECT WITH PRINCIPAL. A contract giving brokers the
"exclusive right to sell" real property for a certain period of time,
without negativing the right of the principal to sell the property
himself, is not violated by a sale by the principal, during such time,
and such a sale does not render the principal liable for commissions
where the purchaser was not procured by, or a customer of, the
broker.

SAME (4, 19·). In such a case, a further provision that the
owner agrees that he will pay commissions, "in case of sale," or if
the broker is instrumental in finding a purchaser, does not negative
the right of the owner to make a sale.

Appeal from a judgment of the superior court for
Yakima county, Nichoson, J., entered June 4, 1921,
upon the verdict of a jury rendered in favor of the de-
fendants, in an action for a broker's commissions.
Affirmed.

*Stephen E. Chaffee* and *R. John Lichty,* for appel-
lant.

*Richards, Fontaine & Gilbert,* for respondents.

FULLERTON, J.—On October 2, 1920, the respondents,
Bernier, owned a tract of land situated near Sunny-
side, in this state. On the date given, they listed the
same for sale with the appellant, Sunnyside Land &
Investment Company, a real estate broker. The list-
ing agreement was in writing and was to the following
effect:

"This agreement made and entered into this 2nd
day of Oct., 1920, by and between John D. Bernier of
Outlook, Washington, party of the first part, and the

[1]Reported in 205 Pac. 1041.

Sunnyside Land & Investment Company, a corporation, having its principal office and place of business at Sunnyside, Washington, party of the second part:

"Witnesseth: That the said party of the first part for and in consideration of the sum of one dollar ($1) to him in hand paid by the second party, the receipt whereof is hereby acknowledged, and of the services to be performed by the second party as hereinafter stated, does hereby give and grant to the second party for a period of 3 months from date hereof, and thereafter until withdrawn by 15 days written notice, exclusive right to sell the following described real property situated in the County of Yakima, State of Washington, to-wit:

"N½ of SW¼ lying east of 29.68 Govern. lateral, in section 17, Township 10 North, Range 22 E. W. M., containing 44 acres, subject to the contract entered into with the Sunnyside Water Users' Association, a corporation, for water right for said land on which there has been paid $—— per acre, and also subject to contract for an additional water right with the United States of America on which there has been paid $10 per acre, on the following terms, to-wit:

"Purchaser assumes drainage.

"The purchase price of said property to be $300.00 per acre, on which the sum of equity is to be paid when abstract of title is furnished showing marketable title except as herein stated, and balance to be paid as follows: ———————— with interest at the rate of 6 per cent per annum, payable annually. The purchaser to assume the balance due on water right for said premises in addition to said payments.

"There is a mortgage for $7,000-$1,000 per year against said property, which the purchaser shall assume and agree to pay as part of the purchase price.

"Contract for deed to be given and the purchaser may at his option when one-half of the purchase price has been paid, demand a deed and give back notes secured by first mortgage for balance of purchase price. Contract to be executed by first party on above terms as soon as purchaser is found.

"The second party in consideration of the premises hereby agrees that it will endeavor to sell said premises, and the first party in consideration of said agreement and the payment of one dollar ($1) does hereby agree to and with the second party that he will in case of sale, or if said second party is instrumental in finding a purchaser, pay said second party a commission on the selling price of five per cent."

Prior to the expiration of the agreement, the respondents sold the land to one James Robinson. They refused to pay the broker the commission provided for in the listing contract, and this action was instituted to recover the same. The case was tried by the court sitting with a jury, and resulted in a verdict and judgment in favor of the respondents.

It was a question in the court below whether Robinson, to whom the respondent sold the property, was a customer procured by the appellant, and the appellant in this court argues that he was, but the evidence on the question is conflicting and was resolved by the jury in favor of the respondents. This concludes the question here.

The remaining question is, was the listing contract of such an exclusive nature as to entitle the appellant, on a sale of the property during the life of the contract, to the commission named therein, regardless of the fact whether it was or was not the procuring cause of the sale.

It is a general rule, supported by practically unanimous authority, that where an owner of property does nothing more than list his property with a broker for sale on commission at a stated price, the broker is entitled to his commission only when he is the procuring cause of the sale; that such a listing does not prevent the owner from selling the property to a purchaser of his own procuring, or render the owner liable to the

listing broker for a commission if he does so sell.
When the owner gives to the broker the exclusive
agency to sell, the authorities are not so unanimous as
to the liability of the owner. The weight of authority
is, perhaps, that the owner is liable for the commission
when he sells the property during the life of the con-
tract, even though to a purchaser of his own procuring.
There are, however, authorities which have adopted
the contrary rule, and we have heretofore aligned our-
selves with them. In *Hammond v. Mau,* 69 Wash. 204,
124 Pac. 377, 40 L. R. A. (N. S.) 1142, we used this
language:

"If a contract is silent as to the character of the
agency, the owner is entitled to sell without making
himself liable for the payment of commissions, and
many cases go so far as to hold that, if the contract
provide that the broker shall have an exclusive right
to sell, but does not in terms inhibit the principal from
selling, the contract is not violated if the principal sell
to one who is not a customer of the broker. It is only
where an exclusive agency is granted upon sufficient
consideration, or it is plainly the intent of the parties
that the agency shall be exclusive, that the principal
is liable when he makes the sale on his own account."

In *Brownell v. Hanson,* 109 Wash. 447, 186 Pac. 873,
the contract appointed the brokers "sole agents for the
sale" of the property for a named period. The case
was determined upon other grounds, but we again
said:

"We would be inclined to hold, in accordance with
the minority of the courts, that a contract giving the
broker exclusive authority to find a purchaser for
property, but not negativing the right of the principal
to sell the property himself, is not violated by a sale
by the principal, and in the event of such a sale, the
agent is not entitled to a commission."

In *Keith v. Peart,* 115 Wash. 552, 197 Pac. 928, the
brokerage contract gave the broker the "exclusive

agency" for the sale of the property, but did not negative the right of the owner to sell during the life of the contract. The owner made a sale of the property during such time, and the broker brought the action to recover commissions. In the complaint he alleged that he was the procuring cause of the sale. The answer denied the allegation, and on the trial the court held this question to be immaterial, construing the contract as one entitling the broker to his commission if the property was sold by the owner during the life of the contract, regardless of the procuring cause, and directed a judgment in his favor. This we held error, using this language:

"The written authority given the respondent [the broker] made him an exclusive agent, but did not negative the right of the principals to sell the property themselves . . . This is the test in this case. It is a question as to whether or not the respondent was the efficient, procuring cause of the sale to Shook, . ."

There is, however, a difference in the wording of the contracts in the cases to which we have referred and the wording of the contract in the present case. In the second of the cited cases, the brokers were appointed as "sole agents" for the sale of the property, and in the third they were given an "exclusive agency" for the sale, while in the present case they are given the "exclusive right" to sell. Based upon this difference in language, the appellant contends for a difference in rule, arguing that the phrase "exclusive agency" has not the same meaning as the phrase "exclusive right", and that, where the broker has a contract giving him the exclusive right to sell the property of his principal, he has the right to his commission, even though he might be denied the right if the contract was only one of exclusive agency. But we

cannot think there is any essential difference in the contract, no matter which of the phraseologies is used. Primarily, the contract is, in each instance, one agreeing to pay a commission in the case the broker procures a purchaser for the listed property, able, ready, and willing to take it on the terms the owner offers it for sale, and if the grant of an exclusive agency for that purpose means, as the rule adopted by us presupposes, that the owner will not list the property with another agent during the life of the agency, the grant of an exclusive right can mean no more.

The concluding clause of the contract, it will be observed, provides that the broker will endeavor to sell the premises, and that the owner agrees to and with him "that he will in case of sale, or if the second party is instrumental in finding a purchaser," pay the broker a stipulated commission. It is argued that the language quoted from this clause of the contract renders the owner liable in the case of a sale, regardless of who was the procuring cause of the sale. But it is manifest, we think, that the language means a sale to a customer procured by the broker, and is without reference to a sale with which the broker has nothing to do.

The judgment is affirmed.

PARKER, C. J., MITCHELL, TOLMAN, and BRIDGES, JJ., concur.