[Civ. No. 7819.   Third Dist.   Dec. 28, 1950.]

E. A. STROUT WESTERN REALTY AGENCY, Appellant,
v. ROBERT GREGOIRE et al., Respondents.

Neil J. Cooney for Appellant.

Virgil O'Sullivan for Respondents.

VAN DYKE, J.—Appellant herein, a corporation, as plaintiff, brought action against respondents, Robert Gregoire and Veronica Gregoire, his wife, basing its action upon a contract in writing executed by respondents, giving it brokerage rights in respect of the sale of real property owned by the respondents. The parts of the contract pertinent to the issues presented here are as follows: The respondents employed appellant "to procure a purchaser ready, willing and able to buy" the property and authorized appellant to make in respondents' name a binding contract for the sale thereof. If a customer was so procured respondents agreed to pay appellant a commission of $150 plus 5 per cent of the selling price. The price was stated to be $60,000. The contract declared that the listing of the property and the continued endeavor of the appellant to sell the same should constitute sufficient consideration for the agreement. By an amendment to the contract, appended thereto, but executed on the same day, it was agreed that the contract should be amended "in that it give to the E. A. STROUT WESTERN REALTY AGENCY, INC., the sole and exclusive right to procure a purchaser" for the property for a period of twelve months. It was alleged in the complaint that upon the execution of the contract appellant commenced extensive advertising in an effort to sell the property and thereon expended large sums of money advertising the property in metropolitan newspapers. It was further alleged that appellant through its efforts secured several prospective purchasers for the property and that on December 6, 1948, approximately three and a half months from the time the agreement was signed, appellant exhibited the property to a customer procured by it, and brought the customer to respondents; that the customer then orally offered to buy the property for $45,000, whereupon respondents asked for time to consider the offer; that on the day following respondents orally notified appellant of their acceptance of that offer; that thereupon appellant communicated the acceptance to the customer by telephone and on December 9th received a telegram from him, confirmed by letter of the same date, instructing appellant to proceed with the sale; that the customer in the letter enclosed a deposit check for $500; that on December 10th respondents orally notified appellant they would not consummate the sale and further notified it that they had sold the property to one Babu Singh; that

respondents refused to pay any commission whatever and that appellant thereby sustained damages in the sum of $2,400.

Respondents answered and upon the issues thereby raised the cause went to trial before the court without a jury. The court made findings of fact as follows: It found the corporate capacity of appellant and that it was duly licensed as a real estate broker in this state; it found the contract to have been executed as alleged; concerning the allegations as to the customer found by appellant the court found that appellant did not bring the customer and respondents together at any time and that the customer did not offer to buy the property for $45,000 or for any sum; that respondents did not ask for time to consider any offer and did not notify appellant of any acceptance. It further found appellant did not communicate any acceptance to the customer nor did the customer instruct appellant to proceed with the sale nor did he enclose a deposit on the purchase price of the land. Further findings were to the effect that respondents did not orally or in writing or in any manner notify appellant they would consummate a sale with its customer; that respondents sold the property to Babu Singh and refused to pay a commission, but that appellant did not sustain any damage thereby. Judgment was decreed in favor of respondents and from that judgment appellant takes this appeal.

Appellant first contends that by virtue of the contract made, respondents, by selling the property during the term of the agency, became liable to pay damages, measured prima facie by the amount of the commission that was provided for by the contract, and this without regard to whether or not appellant in the meantime had produced a purchaser ready, willing and able to buy upon the terms offered by respondents. Appellant says that the contract entered into was a contract giving to it the exclusive right for the agreed period to sell the property as distinguished from the creation of an exclusive agency. The claimed distinction between a brokerage contract creating an exclusive agency for a definite period and one which, for such definite period, grants to the broker an exclusive right to sell such property has been the subject of conflicting decisions throughout the country. Some courts recognize no such distinction and declare that in either case the owner by implication reserves the right to make a sale during the agreed term of the agency without becoming obligated for a commission under the contract or being guilty of a breach thereof. The reasoning of these courts is well illus-

trated by the case of *Sunnyside Land & Investment Co.* v. *Bernier,* 119 Wash. 386 [205 P. 1041, 1043, 20 A.L.R. 1261], where the court held that a contract which gave the broker "the exclusive right" for a stated time to sell certain property owned by defendants did not entitle the broker to a commission where the owners themselves sold the property within the life of the contract to a purchaser of their own procuring. The court refused to adopt the broker's view that the phrase "exclusive agency" has not the same meaning as the phrase "exclusive right to sell." The court said:

"But we cannot think there is any essential difference in the contract, no matter which of the phraseologies is used. Primarily the contract is in each instance one agreeing to pay a commission in case the broker procures a purchaser for the listed property, able, ready, and willing to take it on the terms the owner offers it for sale, and if the grant of an exclusive agency for that purpose means, as the rule adopted by us presupposes, that the owner will not list the property with another agent during the life of the agency, the grant of an exclusive right can mean no more."

But our appellate courts have long recognized the distinction and declare that under an exclusive agency the principal might still sell through his own efforts to his own customer without breach of the agreement or liability for the agreed commission. In *Golden Gate Packing Co.* v. *Farmers' Union,* 55 Cal. 606, the court said:

"We are unable to discover anything in the agreement which forbade the selling of its goods by the plaintiff to whomever would purchase them in any part of the world. It could not, under that agreement, establish any other agency than that of defendant for the sale of its goods east of the State of California. And there is no evidence tending in any degree to prove that it did. It is not stipulated that the defendant should have the *exclusive sale* of the plaintiff's goods within the territory mentioned, and there is nothing in the agreement from which we can infer that such was the intention of the parties." (Italics added.)

*Snook* v. *Page,* 29 Cal.App. 246, 247 [155 P. 107], was a case recognizing the distinction. The court said:

"The first question of importance, then, is whether the plaintiffs were constituted the *exclusive agents* or were they given the exclusive *right* to sell said property.

"If the former only, the rule is well settled that 'the owner

has the right to sell the same by his own unaided efforts without becoming liable to the broker for commission; that the only effect of such contract is to prevent the owner from placing the property in the hands of another agent and that the owner does not thereby relinquish his right to sell the property himself independently of the broker.' (*Golden Gate Packing Co.* v. *Farmers' Union,* 55 Cal. 606; *Waterman* v. *Boltinghouse,* 82 Cal. 659, [23 P. 195] ; *Dreyfus* v. *Richardson,* 20 Cal.App. 800, [130 P. 161].)

"The right on the part of the owner is an implied condition of the agency, subject to which the agent accepts it, and as his commission is payable only in case of his success in finding a purchaser, the agent takes his chances of the owner himself making the sale. (*Dole* v. *Sherwood,* 41 Minn. 535 [16 Am.St.Rep. 731, 5 L.R.A. 720, 43 N.W. 569].)"

The court, at page 248, then construed the brokerage contract before it:

"The contract herein certainly does not expressly confer upon plaintiffs the exclusive right to sell the property, nor does it in apt terms, if at all, provide for a commission in case the owner himself should dispose of it.

"In considering the matter we are to keep in mind that the burden is upon plaintiffs to establish their claim, and that, since the contract was prepared by them, any uncertainty or ambiguity in the terms of the instrument must be resolved in favor of the owner.

"With this in view, then, taking the contract 'by the four corners,' we reach the conclusion that plaintiffs were made the exclusive agents but they were not clothed with the exclusive right to sell the property. . . . If it had been the intention to deprive the owner of the right to sell, or in case of such sale to create a liability for commissions, it could and, no doubt, would have been easily and clearly expressed."

In *Walter* v. *Libby,* 72 Cal.App.2d 138, 141-142 [164 P.2d 21], this court also recognized the distinction under discussion and applied it. The court said:

"Where, as here, the agent or broker is given an exclusive right to sell, as distinguished merely from a sole or exclusive agency (such as that which engaged the attention of the court in *Dreyfus* v. *Richardson,* 20 Cal.App. 800 [130 P. 161], strongly relied upon by appellant), he is entitled to be compensated when a sale is made by the principal, and it is immaterial that he was not the procuring cause thereof. (*Fleming* v. *Dolfin,* 214 Cal. 269, 271 [4 P.2d 776, 78 A.L.R. 585];

*Gregory* v. *Bonney,* 135 Cal. 589 [67 P. 1038]; *Kimmell* v. *Skelly,* 130 Cal. 555 [62 P. 1067]; *Justy* v. *Erro,* 16 Cal.App. 519 [117 P. 575]; 9 C.J., p. 622, § 101, 12 C.J.S., pp. 219-221, § 94.)''

In *Fleming* v. *Dolfin,* 214 Cal. 269, 271 [4 P.2d 776, 78 A.L.R. 585], where the broker had been given an exclusive right to contract for the sale of the subject property and the sale had been made by the owner without the intervention of another broker the court said:

''It is further contended that irrespective of any fault of defendant, plaintiffs cannot recover in the absence of a showing that they had a purchaser ready, able and willing to buy. This assumes, of course, that the action was brought to recover an earned commission. Such was not the nature of this action, which seeks damages for breach of an exclusive agency contract. ' Plaintiffs were entitled to the exclusive right to contract for the sale of the property during the period specified, and the sale by Pair before the conclusion of that period destroyed that right and made performance by them impossible. Upon this breach by defendants plaintiffs were entitled to sue for the benefits they might have received under it, namely, the agreed commission.''

Enough has been said to show that our courts have long recognized the distinction referred to and have held that where the brokerage contract does grant an exclusive right to sell the subject property then the sale within the prescribed life of the grant by the owner is such a breach of the contract as to permit the broker, without himself having been the procuring cause of the sale or having produced a purchaser, to hold the principal responsible as for a breach of the agreement, the damages being presumptively measured by the commission stipulated to be paid in the event of sale by the broker.

■   Since the written agreement here does not in express terms create either an exclusive agency or an exclusive right to sell, it becomes necessary to construe the same, giving to the language used its fair meaning; and since the instrument and the written amendment thereto were concededly drafted by the appellant we must in construing it apply to it the rule stated in *Snook* v. *Page, supra,* that its terms are to be taken most strongly against appellant. ■   The first part of the instrument declares that appellant is employed to procure a purchaser ready, willing and able to buy the property at the stated price and terms. This is a statement in apt terms of the creation of the usual nonexclusive contract between an

owner and a broker. To the same purport is the covenant that if a customer is so procured a commission will be paid. But by the amendment the parties were evidently endeavoring to state more exactly the scope of the agency, and they expressly agree that there was given to the appellant, not, in terms, the exclusive right to sell the property but expressly "the sole and exclusive right to procure a purchaser" therefor. Now, it has often been declared, wherever there has come before the courts a claim that a brokerage contract creates an exclusive right to sell, as distinguished from an exclusive agency, that the right of the owner to sell through his own efforts will not be considered to have been contracted from him and vested in the broker unless such a construction is made necessary either by express language to that effect or by necessary implication from the terms used. This has been stated to follow from the fact that the owner of property, among the rights arising from ownership, has the right to dispose of the same, the jus disponendi. (*Roberts* v. *Harrington*, 168 Wis. 217 [169 N.W. 603, 10 A.L.R. 810, 812].)

We think that the application of the rules of construction pertinent here impels a holding that the terms of this contract giving appellant the sole and exclusive right to procure a purchaser created an exclusive agency and did not grant an exclusive right to sell. A case of a contract worded almost exactly as this contract is worded is reported in *Ingold* v. *Symonds*, 125 Iowa 82 [99 N.W. 713]. In that case the agent was by the contract "exclusively authorized to procure a purchaser." The court said, at page 714 [99 N.W.]:

"It will be observed that plaintiff was not given the exclusive sale of the property, but did have exclusive authority to find a purchaser. Does such a contract prevent a sale by the owner himself, or, in other words, will a sale by the owner constitute a breach of the contract of agency? The right of an owner to sell his own property is an implied condition of every contract of agency, and unless expressly negatived, will prevail. The commission is payable only in case of the agent's finding a purchaser, and the agent takes his chances on the owner himself making a sale. The only effect of such a contract as the one now before us is to forbid the owner from placing the property in the hands of any other agent. Under such a contract as this the owner has the right to sell the property himself without in any way violating his obligation to his agent. This view is sustained by the unbroken voice of authority. *Dole* v. *Sherwood*, 41 Minn. 535,

43 N.W. 569, 5 L.R.A. 720, 16 Am.St.Rep. 731; *Golden Gate Co.* v. *Farmers' Union Co.,* 55 Cal. 606.''

We conclude that under this contract the respondents were free to sell the property, provided, as was the case here, they sold to a person not procured as a purchaser by appellant.

Appellant further contends that even construing the contract as an exclusive agency only, still it was entitled to recover on the ground that it had, before the sale by the owners, produced a purchaser who was ready, willing and able to buy on terms acceptable to them, and that the act of the owners in selling to Babu Singh prevented the appellant from making a sale. However, the findings of the trial court as hereinbefore set out constitute a complete answer to this contention. These findings are based on substantial evidence, although it is true that the evidence upon the subject-matter was conflicting. The listed price for the property was $60,000. Appellant's customer was considering, according to appellant's evidence, offering $45,000 therefor. The property was actually sold to Babu Singh for $43,000 cash. The court found that this sale was made by respondents without having been presented with any offer, oral or written, from appellant's customer to buy the property for any sum and without their having in effect known of this claim by appellant that its customer qualified as a purchaser ready, willing and able to buy either at the listed price or at any price. Under those circumstances the sale by respondents effectually and of right terminated the agency and appellant failed to make the necessary proof that prior to that revocation it had procured a purchaser ready, willing and able to buy upon either the listed terms or any terms satisfactory to the respondents, and had made this known to the respondents.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 19, 1951.