[Civ. No. 24453.   Second Dist., Div. Two.   July 20, 1960.]

BLANCHE WISE, Respondent, v. REEVE ELECTRONICS, INC. (a Corporation), Appellant.

---

†Assigned by Chairman of Judicial Council.

6

Alfred Lubin for Appellant.

Robert K. Dower for Respondent.

RICHARDS, J. pro tem.*—Defendant appeals from a judgment awarding the plaintiff $4,766.15 and interest as commissions due plaintiff after termination of her employment as manufacturer's representative of defendant, an Illinois corporation, based upon nine separate sales of defendant's products.

The court found, *inter alia,* that in January, 1954, the plaintiff and defendant entered into an oral agreement wherein it was agreed "that in consideration of plaintiff performing services as sales agent of defendant's products in the States of California and Arizona, that defendant would pay to the plaintiff commissions on all products of defendant sold in said territory."

Defendant concedes that plaintiff was appointed a sales agent on a commission basis and "was given the exclusive territory for the greater Los Angeles area." Three of the nine sales upon which commissions were allowed to plaintiff consisted of two sales in Northern California and one in Arizona. Defendant contends that the above finding that plaintiff's exclusive territory embraced all of California and Arizona is not sustained by the evidence. We think otherwise.

Viewing the conflicting evidence on the territorial extent of plaintiff's agency as it will support the finding, it appears that in January, 1954, plaintiff and a Mr. Guenther, president of defendant corporation, met in Los Angeles and discussed her employment as a sales representative. Plaintiff told Mr. Guenther she would not take on defendant's line unless she had the California and Arizona "territory exclusively." Mr. Guenther testified that only the Los Angeles area was discussed. Following this conversation, defendant wrote plaintiff that they had decided on "a single, unified representation on the West Coast" and were releasing other representatives and would like plaintiff to be their representative "in that area." Contemporaneously, the defendant furnished its sales manual to plaintiff which provided among other things, "whether a representative has a formal, signed agreement with Reeve Electronics, Inc., for exclusive representation in a territory or not, unless he has definitely been advised to the contrary, he may consider the territory to be his own, exclusively, under all normal conditions." The evidence although conflicting is

*Assigned by Chairman of Judicial Council.

clearly sufficient to support the finding that plaintiff's "exclusive territory" covered all of California and Arizona.

The allowance of commissions to plaintiff on the two Northern California sales and one Arizona sale is further attacked on the ground that each was a sale upon orders procured directly by defendant, a fact not disputed by plaintiff. Defendant contends that an agent is not entitled to commissions on merchandise sold by the principal within the agent's territory unless the agent has an "exclusive right to sell" contract, and that plaintiff did not have such a contract, the latter contention not being disputed by plaintiff.

*Harcourt* v. *Stockton Food Products, Inc.*, 113 Cal. App.2d 901, at page 905 [249 P.2d 30], lays down the accepted rule that it is well established "that generally if the agency established is an 'exclusive agency' the principal retains the right to dispose of the property by his own efforts, and if a sale is consummated pursuant to such independent efforts by the owner the agent is not entitled to a commission thereon.

On the other hand, if the agency established gives the agent the 'exclusive right of sale' generally the principal is liable for the agent's commission whether or not the agent's services contributed to such sale, since under the terms of such a contract the agent is the only person entitled to sell the property. [Citations.]" (To the same effect: *Wilck* v. *Herbert*, 78 Cal.App.2d 392, 412-413 [178 P.2d 25]; *E. A. Strout Western Realty Agency* v. *Gregoire*, 101 Cal.App.2d 512, 514-517 [225 P.2d 585].)

Although the court did not find that the oral agreement between the plaintiff and defendant provided for plaintiff's "exclusive right to sell" defendant's products, it did find that at all times since prior to the negotiations of employment between the plaintiff and defendant there was a trade custom and usage among out-of-state electronics manufacturers selling on the West Coast that in all contracts in which the representative was granted an exclusive agency, the representative so appointed receives commissions on all sales in the territory even though the order is procured by the manufacturer, and that this custom was known to the defendant and was deemed a part of the contract between the parties. If the finding of such custom and usage is sustained by the evidence, then it becomes immaterial whether plaintiff had an "exclusive agency" or "an exclusive right to sell contract."

Usage and custom may be used to imply terms where no contrary intent appears from the other terms of the con-

tract. (*King* v. *Stanley*, 32 Cal.2d 584, 589 [197 P.2d 321]; *Ermolieff* v. *RKO Radio Pictures*, 19 Cal.2d 543, 550 [122 P.2d 3].) ▇ For a custom to be operative, absent express assent thereto, it must be generally known to the parties. (*Miller* v. *Stults*, 143 Cal.App.2d 592, 603 [300 P.2d 312].) ▇ Knowledge of the custom may be inferred from the fact that a party is engaged in the trade in which it is common. (*Watson Land Co.* v. *Rio Grande Oil Co.*, 61 Cal.App.2d 269, 272 [142 P.2d 950].) ▇ Over defendant's objection, plaintiff's evidence of such custom and usage came from two witnesses, each engineers for an aircraft company. Each was asked in substance if he had an opinion as to the existence of a custom with respect to payment of commissions to a sales agent on an exclusive basis, and each answered in substance that in their opinion the representative would be entitled to a commission regardless of the manner in which the order was obtained. ▇ Custom or usage must be established as a matter of fact and not of opinion, hence, witnesses must testify to its existence as a fact. (*Dutcher* v. *City of Santa Rosa High Sch. Dist.*, 156 Cal.App.2d 256, 263 [319 P.2d 14].) ▇ The only evidence of custom or usage herein being an expression of opinion and not testimony as to the existence of the fact of such custom or usage, the finding of custom and usage is totally without evidentiary support.

▇ Although plaintiff had only an "exclusive agency" contract, which we have concluded embraced all of California and Arizona, and although we have further concluded that the finding of usage and custom to imply a term in her contract that she was entitled to commissions on sales in her territory made directly by defendant is without support in the evidence, nevertheless we conclude that her recovery of commissions on the sales in question must be sustained.

The court found that the "plaintiff, through or by means of her active efforts in the pursuit of said employment by defendant, was and is the active procuring cause of sales within the said exclusive territory of California and Arizona of the various products of said defendant as hereinafter specifically found." Thereafter are set forth in the findings the nine sales and the commissions earned on each.

The plaintiff's evidence respecting her participation in the sales to the University of California Radiation Laboratory, a government facility, at Livermore, California, which the trial court evidently believed, showed that the plaintiff went to the Berkeley office of the laboratory and met a Mr. Weiss in the

purchasing department. He had never before heard of the defendant's products but took literature given by the plaintiff and noted prices as to some items. He told the plaintiff that the laboratory bought on price and that all requests for bids would go directly to the manufacturer. He further said that they would put the defendant on their list and give it an opportunity to bid. Thereafter, the laboratory did request bids from the defendant, and when no orders resulted, plaintiff, at defendant's request, went to the laboratory to determine why no orders had been received and was advised that the defendant's prices were out of line. Later on, according to the testimony of Mr. Guenther, he personally went to the laboratory to contact the purchasing agent and their engineers for the purpose of discussing specifications "because this machine was somewhat special." Thereafter, the orders were placed by the laboratory directly with the defendant. As to the Hughes Aircraft sale, the plaintiff testified without contradiction that she made the sale although the actual order therefor was actually picked up by another representative of the defendant.

In *Brea* v. *McGlashan*, 3 Cal.App.2d 454 [39 P.2d 877], the court, in determining whether a finding that the plaintiff was the procuring cause of obtaining certain advertising contracts was sustained by the evidence, said (p. 465): "The word 'procure' does not necessarily imply the formal consummation of an agreement. . . . In its broadest sense, the word means to prevail upon, induce or persuade a person to do something. . . . The originating cause, which ultimately led to the conclusion of the transaction, is held to be the procuring cause." (To the same effect: *Rose* v. *Hunter*, 155 Cal. App.2d 319, 323 [317 P.2d 1027] ; *Willson* v. *Turner Resilient Floors, Inc.*, 89 Cal.App.2d 589, 595 [201 P.2d 406] ; *Chamberlain* v. *Abeles*, 88 Cal.App.2d 291, 296 [198 P.2d 927].)

In the case last cited the court says, beginning at page 296 : "Where the agent is the procuring cause of the transaction which he was authorized to negotiate 'he is entitled to his commission irrespective of the fact that the principal himself, or through others, may have intervened and actually completed the final act of the negotiation. Accordingly an agent who was the procuring cause of the transaction is entitled to his commission irrespective of the fact that it was consummated by the principal, that he was not personally present when it was entered into, that it was consummated without his knowledge, or that he did not personally see or talk to the other party entering into the transaction.' [Citations.]"

*Willson* v. *Turner Resilient Floors, supra,* is particularly apposite, beginning at page 595: "Particularly is this so where the contract is to be let only after bids are submitted. Unless activities of the type related by plaintiff constitute a procuring cause, no salesman could ever be held to be such where a bid has to be made."

Where the evidence is conflicting, the conclusion as to the procuring cause is one for the trial court and will not be disturbed on appeal. (*Rose* v. *Hunter, supra,* p. 323; *Willson* v. *Turner Resilient Floors, supra,* p. 595.)

Weighing the whole course of conduct of the parties and the reasonable inferences to be drawn therefrom, the evidence that plaintiff originated the contact with the laboratory and with Hughes Aircraft Company and pursuant to her contacts defendant was enabled to bid on the sale of its merchandise is sufficient to support the determination of the trial court that the plaintiff was the procuring cause of the sales.

Still another rule impels us to affirm the award of commissions to plaintiff on the sales above mentioned. As an exception to the rule stated in *Harcourt, supra,* that in case of "exclusive agency" the principal is not liable for commissions where the sale is made pursuant to the independent efforts of the principal, it is established that where there is an "exclusive agency" agreement covering a specific area and the principal invades that area and makes a sale with relation to which the agent by his services has "materially contributed," the agent is entitled to his commission thereon. (*Washburn* v. *Speer,* 206 Cal. 414, 419-420 [274 P. 519].)

A second contention of defendant hinges on the allowance of commissions on three other sales to the University of California Radiation Laboratory made during the plaintiff's employment. Defendant's contention on this point is that there is no evidence to support the award of commissions on these sales other than defendant's answers to plaintiff's interrogatories which answers were not introduced into evidence. However, in a question to the plaintiff as to the "orders that were in fact sold," plaintiff answered by reading into the record the defendant's answer to interrogatories containing a list of all sales made by the defendant, including the three sales to the University of California here in question. Later, defense counsel stated "they are items of merchandise we sold," that is, they are bookkeeping records of defendant as to orders received in 1957 regardless of the procuring party. Later, the court asked plaintiff if the items set out in defend-

ant's answer to her interrogatories, previously read into the record were sales that the plaintiff had contacted and worked on, at which time plaintiff answered affirmatively.

Hence, notwithstanding that the interrogatory answers were not introduced in evidence as a document, the content thereof is clearly in evidence by the testimony of the plaintiff.

Defendant's final contention is a claim of error in awarding plaintiff judgment in three other sales (Gilfillan, Hallet and American Gyro) on orders taken by the defendant after the termination of plaintiff's contract on accounts previously solicited by the plaintiff.

The court found as true the allegations of plaintiff's complaint that "the contract would be of indefinite duration until terminated by either party." On March 24, 1958, defendant notified plaintiff of the termination of her contract as of April 30, 1958, and stated: "We will pay you commissions . . . on sales obtained directly by you . . ., provided those orders are in our hands and are accepted by us prior to April 30, 1958. . . ." The contract between plaintiff and defendant explicitly provided for termination by either party, hence, the defendant's termination thereof by notice was not a breach and the only question is upon what sales was the plaintiff entitled to commissions. The court found the agreement to be as alleged by plaintiff in her complaint that the defendant would pay commissions "on all products of defendant sold" in the territory. "[T]he right of a salesman or any other person to commissions under given circumstances depends upon the terms of his contract for compensation." (*Commeford* v. *Baker,* 127 Cal.App.2d 111, 118 [273 P.2d 321].)

It is established that if the agency contract contemplates payment of commissions for sales of which the agent was the procuring cause, the agent is entitled to commissions on all sales procured by him although the sales are actually consummated by the principal after the termination of the agency. (*Zinn* v. *Ex-Cell-O Corp.,* 24 Cal.2d 290, 296 [149 P.2d 177].) Although the defendant's notice of termination stated that commissions would only be paid on orders received and accepted by them prior to the termination date, such unilateral notice cannot limit plaintiff's rights. Other than a statement in a sales manual sent to plaintiff at the inception of her employment which states that the "commission . . . is paid to him [representative] strictly for sales effort and securing the order for the factory," there is no

evidence as to the contractual terms of payment of commissions on solicitations by plaintiff prior to termination with respect to orders taken by the defendant after termination. The trial court having held that the plaintiff was entitled to commissions on products "sold" and that she was the procuring cause of the three sales in question, the court inferentially found that the products "sold" included those solicited by the plaintiff where the orders were taken by the defendant following the contract termination. We will not disturb the court's interpretation of a contract based on conflicting parol evidence.

Judgment affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied August 15, 1960, and appellant's petition for a hearing by the Supreme Court was denied September 14, 1960.