108 Ariz. 113 (1972)
493 P.2d 495
UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a corporation, et al., Appellants,
v.
STATE AUTOMOBILE AND CASUALTY UNDERWRITERS, a corporation, et al., Appellees.
No. 10340.
Supreme Court of Arizona, In Division.
February 2, 1972.
Rehearing Denied February 29, 1972.
*114 Gust, Rosenfeld & Divelbess by Richard A. Segal, Phoenix, for appellants.
Jennings, Strouss & Salmon by William T. Birmingham and Thomas J. Trimble, Phoenix, for appellees.
STRUCKMEYER, Justice.
This appeal, brought by Universal Underwriters Insurance Company, a corporation, is from a judgment in which the Superior Court of Maricopa County, Arizona determined that State Automobile and Casualty Underwriters, a corporation, did not have the primary obligation to defend Rudolph Chevrolet Company and others in two lawsuits arising out of an automobile accident.
On November 22, 1966, Searls Refrigeration Company owned a certain one and one-half ton Chevrolet stake truck. All Chevrolet vehicles owned by Searls were taken to Rudolph when in need of repairs. On that date, a Searls employee took the truck to Rudolph for minor repairs. The Searls employee signed a written work order which was tendered to him, but did not talk to the mechanic who later made the repairs. Nothing whatever was said at any time about whether the truck would be road tested. Upon the completion of repairs, Rudolph's mechanic, Leslie Krieger, took the truck for a road test to assure himself that the repairs had been satisfactorily completed. During this test, Krieger was involved in an accident in which two women were injured. Actions for damages were subsequently brought against both Rudolph and Searls.
Searls carried automobile liability insurance with State Automobile and Rudolph carried its insurance with Universal. Although Universal felt that State Automobile was primarily liable, when State Automobile refused to defend, Universal defended and eventually settled the claims. Universal then brought this action, as stated, principally to determine which of the two companies' liability was primary. The court below, after a hearing, found that the truck was being driven at the time of the road test by Rudolph's mechanic without the permission of Searls, either express or implied, and entered judgment in favor of State Automobile.
As a part of this state's Financial Responsibility Law, Arizona has adopted what is commonly called the "omnibus clause." It reads:
"B. The owner's policy of liability insurance must comply with the following requirements:
2. It shall insure the person named therein and any other person, as insured, using the motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the motor vehicle or motor vehicles * * *." § 28-1170, subsec. B, par. 2, 9 A.R.S. (Emphasis supplied.)
This omnibus clause is a part of every policy, regardless of whether the policy expressly so states. Jenkins v. Mayflower *115 Insurance Exchange, 93 Ariz. 287, 380 P.2d 145 (1963).
The parties do not dispute that because of the omnibus clause any person using a motor vehicle with the express or implied permission of an insured is also an insured. They concede that Rudolph did not have express permission to road test the Chevrolet truck. The controversy centers upon what constitutes implied permission. Universal's position is that for reasons of public policy, that is, for the benefit of both the driver and injured persons, implied permission should be liberally inferred. See Atlantic National Insurance Company v. Armstrong, 65 Cal.2d 100, 52 Cal. Rptr. 569, 416 P.2d 801 (1966).
Before examining the evidence introduced at the trial, a few preliminary observations should be made. Under a similar omnibus clause of the State of Virginia, it has been held that "an implied permission generally arises from a course of conduct involving a mutual acquiescence in, or a lack of objection to, a continued use of the car, signifying assent." Hopson v. Shelby Mut. Cas. Co., 203 F.2d 434, 436 (4 Cir.1953). It is usually shown by the practice of the parties over a period of time preceding the day upon which the insured vehicle was being used. Tomasetti v. Maryland Casualty Company, 117 Conn. 505, 169 A. 54 (1933); United States Fidelity and Guaranty Co. v. Hall, 237 Ky. 393, 35 S.W.2d 550 (1931); Penza v. Century Indemnity Co. of Hartford, Conn., 119 N.J.L. 446, 197 A. 29 (1938).
The testimony at the hearing established that for many years Searls had sent his Chevrolet trucks to Rudolph for repairs and maintenance, and that all vehicles sent in for repairs were road tested when needed. Searls, however, testified that he had never been advised of any previous road testing and that the road testing in the present case was without his knowledge, assent or acquiescence. This testimony does not establish a course of conduct involving mutual acquiescence or lack of objection signifying assent.
Nonetheless, Universal points to the three classifications into which Appleman, 7, Insurance Law and Practice, §§ 4366, 4367, 4368, divides the adjudicated cases on implied permission. The most liberal classification is what is categorized as the "Hell or High Water Rule." The states following this rule do so for reasons of public policy on the theory that after an injury has occurred it is undesirable to permit litigation as to the use made of the vehicle, the scope of the permission and the purposes of the bailment. It is arbitrarily and conclusively presumed that if the vehicle was originally placed in the possession of the bailee by another having proper authority, then, despite hell or high water, the operation of the vehicle is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated. See, e.g., Gronquist v. Transit Casualty Company, 105 N.J. Super. 363, 252 A.2d 232 (1969); Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368 (1928).
We do not think, however, that the liberal rule has application to permissive users in Arizona. In 1919, in Baker v. Maseeh, 20 Ariz. 201, 179 P. 53 (1919), this Court held that proof of ownership of a motor vehicle is prima facie evidence that the driver of the vehicle causing damage by its negligent operation is the servant or agent of the owner and using the vehicle in the business of the owner. This principle was again recognized in Silva v. Traver, 63 Ariz. 364, 162 P.2d 615 (1945). We held in Silva that "prima facie evidence" means no evidence at all and being a presumption of law is to be applied in the absence of evidence, and whenever evidence contradicting the presumption is introduced, the presumption vanishes. We think that the principles announced in Baker and Silva should be held to apply to all drivers of motor vehicles when not operated by their owners.
In considering the question of implied permission, the evidence on which the *116 trial court acted has been examined to see whether it was sufficient to support the judgment. In this, we are governed by the usual rule that the evidence and inferences therefrom will be taken most strongly in favor of supporting the judgment. Mecham v. United Bank of Arizona, 107 Ariz. 437, 489 P.2d 247 (1971); Lane Title and Trust Co. v. Brannan, 103 Ariz. 272, 440 P.2d 105 (1968).
The evidence falls short of establishing that there is a custom in Phoenix and its vicinity from which permission to road test a vehicle can be implied. Taylor W. Bellsmith, assistant service manager for Rudolph Chevrolet, testified that he had been engaged in the automobile repair business for 37 years and, in answer to the question whether work orders in most garages in the Phoenix area expressly authorize a road test, he answered, "That's right." This testimony would seem to indicate that the practice is to expressly authorize road testing rather than implying permission from delivery of the vehicle for repairs.
A witness for State Automobile, Don Sanderson, testified that he is a Ford dealer in Glendale, Arizona, a town contiguous to Phoenix, and that he had been engaged in the automotive business for thirty years. In response to the question, "What is the custom in the automotive industry with respect to road testing vehicles?" he answered, "It's a practice which we are rapidly getting away from * * *." He further testified that in his service department a customer's vehicle is never road tested in the absence of express permission from the customer, and the express permission is printed on the work order.
A custom or usage of a trade may be established as a fact and a witness may testify to the existence of a custom as a fact, Romero v. H.A. Lott, Inc., 70 N.M. 40, 369 P.2d 777 (1962); Wise v. Reeve Electronics, Inc., 183 Cal. App.2d 4, 6 Cal. Rptr. 587 (1960); Cross v. Fletcher, (Mo. App., 1948), 216 S.W.2d 101, but in the instant case the clear import of the foregoing testimony is that there was no general practice to road test a customer's vehicle from which permission by custom could be implied, cf. Encyclopaedia Britannica, Inc. v. SS Hong Kong Producer, 422 F.2d 7 (2 Cir., 1969). Rather, the practice, although not uniform, is to obtain express permission in a printed work order.
We think the foregoing constitutes substantial evidence from which the lower court could conclude that a custom to road test vehicles from which knowledge and, hence, implied permission could be inferred on the part of Searls does not exist. We hold that Rudolph Chevrolet and its mechanic, Leslie Krieger, were not insureds under the terms and provisions of the State Automobile policy and that it had no obligation to defend any suit or suits arising out of the accident.
Judgment of the court below is affirmed.
HAYS, C.J., and HOLOHAN, J., concur.