119 So.2d 722 (1960)
Barbara NICHOLAS, Appellant,
v.
Arthur J. BURSLEY and Frances R. Bursley, Appellees.
No. 1558.
District Court of Appeal of Florida. Second District.
April 20, 1960.
*723 Silas E. Daniel, Jr., St. Petersburg, for appellant.
Neal D. Huebsch, Eustis, for appellees.
ALLEN, Chief Judge.
This is an appeal from a final order dismissing the appellant-plaintiff's complaint for damages for an alleged breach by appellee-defendants of an exclusive brokerage contract.
In the first part of December, 1958, the defendant, Arthur J. Bursley, wrote to the plaintiff, Nicholas, requesting that plaintiff have one of her representatives contact him in reference to placing his trailer park on the market. On December 6, 1958, the plaintiff answered the defendant's letter stating that they would contact him on December 14th or 15th to discuss further the details of selling his trailer park for him. On December 18, 1959, the plaintiff again wrote the defendants thanking them for the listing and enclosing a contract entitled "Exclusive Sales Agency." On January 10, 1959, this contract was signed by the defendants and returned to the plaintiff.
The plaintiff is a real estate broker licensed by the State and specializes in the sale of trailer parks. After the contract was signed the plaintiff tried to sell the defendants' trailer park through personal contacts and advertising. On February 24, 1959, the plaintiff visited the trailer park and discovered that it had been sold by defendants to Mr. and Mrs. B.J. Sharp who had lived in the trailer park for some time. On February 27, 1959, the plaintiff received a letter from defendant, Arthur James Bursley, advising her that they had found a purchaser and thanking the plaintiff for her efforts. The deed of sale to the Sharps from the defendants was dated March 2, 1959, and recorded March 13, 1959. The plaintiff had never seen or talked to the Sharps in regard to purchasing the defendants' trailer park.
On March 27, 1959, the plaintiff filed a complaint which was amended on July 6, 1959, which alleged the above facts and incorporated a copy of the contract therein seeking a broker's commission for the sale of the trailer park. This contract, which was drafter by the broker, provided that the plaintiff was to have "for a period of 6 months from this date the exclusive right and authority to sell the property at the price and terms acceptable to me. $97,000.00. *724 Cash down payment $35,000.00" The contract further provided:
"2. For finding a purchaser for the above property, we agree to pay a commission of 10 per cent of the first $50,000.00 and 5% on balance.
"3. The commissions are to be paid whether the purchaser be secured by you or any other broker at the price and terms mentioned, or at any other price and terms acceptable to me; or the property is afterwards sold within three (3) months from the termination of this agency to a purchaser to whom it was submitted by you or a co-operating broker, during the continuance of this agency, and whose name has been disclosed to me." (Emphasis added.)
On July 31, 1959, the lower court granted defendants' motion to dismiss and entered a final order holding that the contract and complaint failed to show an exclusive right and authority to sell sufficient to preclude the owner from selling the property without obligation to the plaintiff.
Much confusion has arisen in the field of real estate brokerage commission cases in the various jurisdictions. We are not concerned with nor will we now attempt to reconcile these divergent holdings of other jurisdictions. But, on the contrary, we believe that the holdings of the courts of Florida have established certain basic principles to be applied in distinguishing between an exclusive agency or listing contract, and an exclusive right and power of sale contract as illustrated by the specific factual situations which gave rise to each of the cases.
The contract in Wiggins v. Wilson, 55 Fla. 346, 45 So. 1011, 1012, was composed of a series of letters which were written by a duly authorized spokesman of the seller to the real estate agent who ultimately found a buyer ready, willing and able to buy the subject property. The first of these letters provided that the owner "will sell property at one dollar per acre and pay com. at ten per cent. If you can make sale at these figures you are authorized to close, or we should be pleased to consider a counter proposition. The property is now ready to be sold." A subsequent letter also written by the seller's spokesman stated that if the brokers can close a deal or sale of the 21,000 acres of land at 80 cents per acre, 1/3 cash, 1/3 in November, and 1/3 in 12 months from date of sale, deferred payments to bear interest at 8 per cent from date of sale, and the purchaser in addition to pay taxes then due upon the property, then the seller would pay 5 per cent commission.
The Court stated, in holding that the above described transaction was a conditional contract, that there are distinct differences between brokerage contracts. The Court stated:
"A broker employed to sell, as distinguished from a broker employed to find a purchaser, is not entitled to compensation until he effects a sale or procures from his customer a binding contract of purchase. Ormsby v. Graham, 123 Iowa 202, 98 N.W. 724. On the other hand, a broker employed to find a purchaser must either produce to the owner a customer who is able, ready, and willing to buy on the terms prescribed by the owner, or else take from the customer a binding contract of purchase. 19 Cyc. p. 255, and cases cited. `Generally if a broker has brought the parties together, and as a result they conclude a contract, he is not deprived of his right to a commission by the fact that the contract so concluded differs in terms from the one which he was authorized to negotiate. Where, for example, the principal consummates a sale to a purchaser found by the broker, he is liable for the commission, although the sale is made at a smaller price than that originally proposed by him to the broker, unless the right to a commission is made conditional upon a sale at *725 the price mentioned in the broker's authorization.' 19 Cyc. p. 249 et seq., and citations. An agent or broker to whom is given the exclusive right to sell a tract of land belonging to another cannot recover his commissions when the owner sells the land, unless he has produced a purchaser ready and willing to buy on the terms specified in his contract of employment. * * *" (Emphasis added.)
In South Florida Farms Co. v. Stevenson, 84 Fla. 235, 93 So. 247, 248, the plaintiff broker had obtained a verdict and judgment for a broker's commission based on two letters between the parties. The corporate owner wrote a letter to the plaintiff offering to employ him as manager of the owner's business for which plaintiff was to receive $250 per month. In addition to the salary, the plaintiff was to try and sell certain land owned by the corporation. This portion of the letter stated:
"* * * That the moving consideration for this arrangement is not only the management of the company routine business, but also the disposal of all the company holdings outside of the town of Moore Haven, which consists of about 52,000 acres of land in Lee county and about 30,000 unsold acres in De Soto county. It is agreed to by us that we will accept an average price of $12 net per acre for the Lee county land, and $21 net for the De Soto county land, no deduction or commissions off to any one but yourself. That if within two years from August 1, 1919, this entire unsold acreage is sold to net the above figures to this company, and on terms acceptable to us, you are to receive from us a commission of 5 per cent. If all the land in either, but not both, counties is sold, your commission shall be 2 1/2 per cent. This arrangement to hold good on any excess price which may be obtained, the prices mentioned herein being the absolute minimum."
The plaintiff subsequently accepted the employment and took over the management of defendant company in July or August. In the following December, plaintiff was dismissed from his employment and later filed this suit to recover commission on certain lands which plaintiff sold while employer by defendant. It appears that during the same time the defendant sold part of the land itself. The plaintiff in its declaration claimed an exclusive contract for the sale of defendant's lands and therefore claimed a commission on the land sold by the defendant owner during the life of the contract.
The court held that the alleged exclusive right of the plaintiff to sell did not deprive the defendant of its inherent right to sell its own land (citing Wiggins v. Wilson), and therefore plaintiff is only entitled to a commission on the land that it actually sold but was not entitled to a commission on the land sold by the defendant owner.
In a concurring opinion the following quote from 4 R.C.L. 259 was cited with approval:
"`In accordance with the weight of reason and authority, it is generally held that a broker has neither an exclusive right, nor an exclusive agency, to sell, even though he is employed for a definite period of time, unless he is granted either one or the other in unequivocal terms to that effect; and in the absence of such an express grant the employer may sell independently, either through his own efforts or those of another.'"
The case of Flynn v. McGinty, Fla. 1952, 61 So.2d 318, presents a clearer set of facts to illustrate an exclusive right and power of sale as distinguished from an exclusive agency. The defendant-owner went to plaintiff-broker's office and offered a listing with the broker. While the owner waited, the broker dictated the following agreement which was subsequently duly witnessed and signed by the owner:

*726 "To Jim McGinty, Broker:
"In consideration of your endeavor to procure a purchaser for the property described herein, which is made a part of this contract, the undersigned grants you the exclusive right for a period of 90 days to sell said property at the price and upon the terms stated hereon or at any other price and terms to which I may consent, and in the event of sale of said property by myself or through your instrumentality or any other person during the term of this contract, I agree to furnish an abstract of title showing good and merchantable title in me and to execute deed conveying title or contracts in accordance with said terms and to pay you a coommission (sic) of 7 1/2 per cent of the selling price, and I further agree to assist and cooperate in such sale. The exclusive privilege is granted to place your sign on this property and to remove all other signs thereon. The price of this property can not be raised by the owner nor the terms made more severe without first giving you 30 days written notice." (Emphasis added.)
The above agreement was executed on a Thursday and on Sunday the broker advertised the property. On Monday the owner sold the property to one who had not seen the ad nor had the broker approached the buyer. The lower court found for the broker and the owner appealed. The Supreme Court commented on the South Florida Farms Co. v. Stevenson case, supra, and noted that in that case:
"* * * the majority failed to find in the contract any provision giving to the agent the `exclusive right to sell' the property involved; and indeed one will look in vain for any unequivocal provision of that nature in the contract.
"In the instant case there can be no doubt as to what the parties meant by their agreement. It is plainly and unequivocally stated that commission will be earned whether the property was sold `by myself, or through your instrumentality or any other person'. These words leave no room for construction or interpretation."
The salient portion of the brokeragecontract in Alex D. Smith Real Estate, Inc. v. Gables Venetian Waterways, Inc., Fla. App. 1957, 98 So.2d 372, 373, provided that:
"The Owner agrees to pay the Broker upon consummation of any sales the sum of 10% of the selling price of each transaction up to Five Thousand and no/100 ($5,000.00) Dollars, and 5% of all sums in each transaction over the first $5,000.00.
"In the event the Owner wishes to terminate this contract at any time it may do so upon payment to the Broker of the sum of Forty-five Dollars and 40/100 ($45.40) for each acre remaining unsold in the property above described and upon payment thereof this agreement shall be terminated and all parties released herefrom."
In regard to whether the broker had a right to a commission on 263 acres which the owner had contracted to sell three days prior to terminating the brokerage contract, the Court stated:
"Under the exclusive right to sell contract, the broker was entitled to a commission on the sale of the 263 acres (payable upon consummation) even though the sale was arranged by the owner and not through the broker's efforts. Flynn v. McGinty, Fla. 1952, 61 So.2d 318."
The Court goes on to cite the following language from Dobbs v. Conyers, 36 Ga. App. 511, 137 S.E. 298:
"`Where such contract of exclusive listing provides that the owner agrees to pay to the real estate agent the "regular real estate commission if sold by [the agent] or any one else during that time," the word "sold" has reference not only to an *727 executed sale by the owner whereby a bond for title or a deed of conveyance is executed and delivered by the owner, but also to an executory contract of sale of the property, made and entered into by the owner.'"
The above quote indicates that in the Dobbs case the brokerage contract may have been similar to the contract in the instant case. Upon reading the syllabus opinion in the Dobbs case, however, the terms of the contract are not given nor is the nature of the contract set forth in the opinion, thus it is of little assistance in the determination of the instant case. It is to be noted, however, from the foregoing decisions, that the owner has been held liable only where either the contract unequivocably relinquishes to the broker the owner's right to sell or the broker has actually produced a purchaser ready, willing and able to buy the property.
While a literal definition of the term "exclusive" would perhaps simplify the issue, it cannot be justifiably done when, as in the instant case, the term "exclusive" must be considered along with all other words in the instrument in an attempt to determine the intent of the parties. The use of the words "exclusive agency" or "exclusive sale" is not conclusive but, as in other cases involving judicial interpretation, all the circumstances must be considered. Harcourt v. Stockton Food Products, 1952, 113 Cal. App.2d 901, 249 P.2d 30. It has been held that under a contract whereby a broker was employed as the "sole and exclusive agent" of the owner to sell property that the owner may make a sale himself, without the broker's aid, and, if the sale is made in good faith to a purchaser not procured by the broker, the owner does not become liable for commissions to the broker. Levy v. Isaacs, 285 App.Div. 1170, 140 N.Y.S.2d 519. It is also noted that in Louis Schlesinger Co. v. Rice, 4 N.J. 169, 72 A.2d 197, 201, the court held that an "exclusive agency" granted to a real estate broker precludes the owner from selling property through another broker, but unlike an "exclusive right to sell" does not preclude the owner from selling to a purchaser procured by the owner. After discussing the various types of brokerage contracts in Sunnyside Land & Investment Co. v. Bernier, 1922, 119 Wash. 386, 205 P. 1041, 20 A.L.R. 1261, the court held that where a broker's contract provided that the broker will endeavor to sell the premises, and that the owner agrees to and with him that he will, in case of sale, or if the broker is instrumental in finding a purchaser, pay a commission, such sale means a sale to a customer procured by the broker, and is without reference to a sale with which the broker has nothing to do.
The cases seem to agree that when an "exclusive agency to sell" real estate for a stated commission is given, the exclusive right to sell not being clearly given, the owner himself has still the right to make a sale independent of the agent, and in such case will not be liable to the agent for commissions unless he sells to a purchaser procured by the agent. This reserved right on the part of the owner is an implied condition of the agency, subject to which the agent accepts it, and, as his commission is payable only in case of his success in finding a purchaser, the agent takes his chances of the owner himself making a sale. Thus, an "exclusive agency to sell" merely prohibits the placing of the property for sale in the hands of any other agent, but does not prohibit the sale of the property by the owner himself.
In view of the above incidents attendant to "an exclusive agency to sell," it would seem that under the foregoing decisions of this State, an "exclusive right to sell" would have to be clearly set forth in unequivocal language within the four corners of the contract in order to divest the owner of his inherent right to dispose of his own property. As long as any ambiguity exists, the courts appear to favor an interpretation that will protect the owner. *728 In most situations and, as was true in the instant case, the broker is the drafter of the contract. Consequently, it is a general rule that a contract will be construed against the party who drew it or chose the language and any ambiguity will be construed strongly against the party making use of such language. 7 Fla.Jur.Contracts, sec. 87.
In resolving the ambiguities in the instant contract, we note that under paragraph 1 the contract states:
"* * * we hereby give you for a period of 6 months from this date the exclusive right and authority to sell the property at the price and terms acceptable to me. $97,000.00. Cash down payment $35,000.00."
but in paragraph 2, supra, the agreement to pay a commission is contingent upon the broker finding a purchaser. We note in paragraph 3, supra, that a further explanation of when and under what contingency the commission is to be paid is set forth. More specifically paragraph 3 provides that the commission will be paid if a purchaser is found by the plaintiff broker or any other broker during the period covered by the contract, or if the property is sold within three months from the termination of the contract to a purchaser to whom it was submitted by the plaintiff broker or a co-operating broker, during the continuance of the agency and whose name had been disclosed to the owner. The clear intendment of paragraphs 2 and 3 would appear to be that the finding of a purchaser was a condition precedent to any liability on the part of the owner to pay the commission notwithstanding the language found in paragraph 1.
The plaintiff broker did not present any prospective purchaser to the owner nor is there any allegation made in the pleadings that the broker had located a prospective purchaser. The purchasers to whom the owner sold the property were residents of the trailer park and had never heard of or been contacted by the plaintiff-broker or any of plaintiff's agents. It is, therefore, manifest that plaintiff has not shown that she has complied with the condition precedent in any manner whatsoever. This fact, plus the absence of an unequivocal provision in the contract that the owner has given up his inherent right to sell his property, considered in light of the language of the cases cited herein, leads us to the conclusion that the lower court must be affirmed in holding that the amended complaint failed to show an exclusive right and authority to sell sufficient to preclude the owner from selling the property without obligation to the plaintiff.
Affirmed.
SHANNON, J., and MILLEDGE, STANLEY, Associate Judge, concur.