HENDRY, Chief Judge.
This is an appeal by the defendant, Niagara Therapy Manufacturing Corporation, from a final judgment entered on a jury verdict in favor of plaintiff, Niagara ■Cyclo Massage of Miami, Inc., hereinafter referred to as “the distributor”, in an •action for breach of an exclusive distributorship contract.
On appeal, Niagara contends that the 'lower court erred in finding that certain paragraphs in the contract were ambiguous thereby justifying the admission of parol testimony. Niagara also contends that the jury verdict of $15,000.00 for the distributor is excessive and not substantiated by evidence in the record.
The contract between the parties was signed on Dec. 16, 1964. In April, 1965, an annual home show was being conducted at the Dinner Key Auditorium in Miami for a period of one. week. Miami is within the territory in which the distributor is exclusive distributor for the sale and distribution of the Niagara Massage equipment. During the show, Niagara, which had leased space and allotted a portion <?f said space to the distributor, conducted demonstrations and sales. The value of the products sold by Niagara at the show was $7,340.90 on which Niagara claims there was a net profit of $1,618.95. Niagara contends that the following paragraph contained in the contract gave it the right to sell its products within the distributor’s territory at any show, fair or exposition in which it rented space:
“NIAGARA will endeavor to assist DISTRIBUTOR in the establishment and continued successful operation of the DISTRIBUTOR’S business under this Agreement and to this end NIAGARA agrees: * * *.
“To allot such space as NIAGARA may determine, on a pro rata cost basis in any show, Fair, or Exposition in which NIAGARA may rent space in DISTRIBUTOR’S territory. When said space is rented, that portion allotted to the DISTRIBUTOR shall be for his exclusive use to make sales for his own distributorship. NIAGARA personnel in the company portion of the space will assist and aid the local sales personnel and instruct them in show procedure.”
The court ruled that there is an ambiguity in the above provision as to the right of Niagara to sell its products at the show. The court did not err in this ruling.
*476 The contract confers upon the distributor the exclusive right to sell Niagara products within certain territory, which includes Miami. The provision above does not expressly reserve the right of Niagara to sell its products at shows. Another provision in the contract does expressly reserve the right of Niagara to sell or demonstrate to hospitals, institutions, medical centers, clinics, educational centers, surgical and physicians’ supply houses, governmental agencies, or members of the medical profession. If Niagara has the right to sell at shows it must be implied from the language employed by Niagara. However, an express provision can not generally be varied by an implied one and in cases of doubt a contract is construed most strongly against the party who prepared it.[1] The distributor was expressly granted exclusive right to sell in certain territory and any reservation by Niagara should have also been expressed. At least, it can be said that it is uncertain whether Niagara had the right to sell at shows, and the lower court did not err in permitting parol testimony to resolve the uncertainty.
Niagara also contends that the distributor was in default of a quota provision in the contract prior to the home show and that therefore it is in no position to claim a subsequent breach. However, the quota provision was not invoked until after the instant law suit was filed.
The provision provided that the distributor shall maintain the minimum monthly sales quota set forth in Schedule C. Schedule C provided for “43 units per week, 185 units per calendar month”. No penalty was provided if the quota was not met although Niagara had the option to terminate the agreement at any time within thirty days following the termination date, Dec. 31, 1965, if the distributor had not maintained the average monthly quota which had been set forth for the six month period preceding the date of termination. The lower court permitted testimony concerning the definition of a “unit” and the purpose of the quota.
The testimony revealed that a unit represents about $100.00 retail value and that the quota was to be used in case Niagara wished to terminate the contract. The distributor admitted that it did not meet the quota. In response to a question concerning the meaning of the quota, a representative of the distributor answered that he was told by a representative of Niagara that “you are not expected to make it”. A motion to strike this answer was granted and the jury instructed to disregard it.
The definition of the term “unit” and the purpose of the quota can not be ascertained from the contract itself nor is there a usual meaning which can be applied to these terms in connection with this business. Thus, the court was correct in permitting parol testimony to determine the meaning which the parties intended.
The investment of the incorporators of the distributor was $12,000.00. At the time it closed its business, it had an inventory of $7,000.00 sold to it by Niagara. The distributor claims that the inventory’s true value is indicated by the fact that Niagara refused to buy it back. There was testimony that the incorporators spent forty hours a week working for the distributor during its period of operation without reimbursement. The sales made by Niagara at the home show totaled $7,340.90 on which Niagara claims a net profit of $1,-618.95. The court instructed the jury that because the distributor had not established a sufficient history of profit, loss of profit should not be considered an element of damages.
Based on the evidence and the instructions of the court the jury returned a verdict of $15,000.00 for the distributor. The verdict of the jury need not be calculated with absolute exactness. It is suf *477 ficient if there is a reasonable basis in the evidence for the amount awarded.
 We hold that the instructions of the court correctly apprised the jury on the theory of damages and that the evidence affords a reasonable basis for the amount awarded by the jury.
No reversible error has been made to appear, therefore, the judgment appealed is affirmed.
Affirmed.

. Nicholas v. Bursley, Ma.App.1960, 119 So.2d 722, 88 A.L.R.2d 929.