JORGENSON, Judge.
For the following reasons we reverse the final summary judgment under review and *392 remand this action to the trial court for further proceedings.
This case began in 1970 when Trafalgar Developers Ltd. [Trafalgar] brought a declaratory action seeking to have two contracts between Trafalgar and Geneva Investments Ltd. (and Geneva’s principal, Nick Morley) [Geneva] declared void and unenforceable on the grounds that Geneva did not have a Florida real estate license at the time the contracts were executed. The two contracts concerned the development by Trafalgar of the Fontainebleau Park apartment and condominium complex in Dade County. The first contract provided for Geneva to market Trafalgar’s properties and the second contract provided for Geneva and Trafalgar to form a corporation to manage rental units in the complex. This court in Geneva Investment, Ltd. v. Trafalgar Developers, Ltd., 274 So.2d 581 (Fla. 3d DCA), cert. discharged, 285 So.2d 593 (Fla.1973), held that the contracts were not void and unenforceable as licensing need only be in effect at the time of performance, not at the time of contract execution.
In 1975 Geneva filed a motion for supplemental relief and the trial court retained jurisdiction to consider Geneva’s allegations that it had performed all conditions precedent and was ready, willing and able to perform the contracts but had been prevented from performing by Trafalgar’s breach of both contracts. Geneva further alleged that under the first contract Trafalgar was to periodically provide Geneva with lists of all units which had been built and were ready for sale and that Trafalgar never provided Geneva with such lists, thereby preventing Geneva from performing. Geneva also alleged that Trafalgar refused to join with Geneva to form the corporation to manage rental units and that Trafalgar had wrongfully appropriated certain marketing ideas from Geneva.
Geneva filed a motion for partial summary judgment on the issue of Trafalgar’s breach of the first contract and, shortly thereafter, Trafalgar filed a motion for summary judgment. During a hearing on both summary judgment motions it was stipulated that the issues to be determined were
(1) Whether the sales contract created an exclusive sales agency or conferred upon the broker an exclusive right to sell; and
(2) Where there is an anticipatory breach of the contract sued upon, must the party seeking to recover damages for such breach be prepared to show its willingness, readiness and ability at all times to perform its obligations thereunder in order to recover damages.
The court entered an agreed order which provided for the parties to file written memorandums of law in support of their positions. After the parties filed their memorandums and after a subsequent hearing the court entered a summary judgment on both issues in favor of Trafalgar and then entered a final judgment in favor of Trafalgar. The trial court found (1) that the agreement created an exclusive sales agency and (2) that Trafalgar’s anticipatory breach of the agreement did not entitle Geneva to recovery because Geneva was not ready, willing and able to perform the obligations under the agreement.
As to the first issue we hold, contrary to the trial court, that the sales contract between the parties created an exclusive right to sell. The agreements which are the focus of this litigation can hardly be called typical broker-seller contracts. The parties to these agreements were sophisticated businessmen. The parties’ intent under the agreement was to create a joint venture with Trafalgar developing and Geneva marketing the properties. The first contract provided that
it is the intention of the parties that Geneva shall have the exclusive right to sell, lease and rent all properties (including the sale of condominiums, buildings of all kinds, lot sales', homesites, acreage and the like, and the lease and/or rental of apartments, lots, home-sites, acreage, shopping centers, stores concessions and the like) located in Fon-tainebleau Park which is to be sold or *393 leased to any party or entity during the term hereof, and the general responsibility for organizing, supervising and controlling a complete sales and rental organization for the most effective possible marketing of such properties throughout the United States and elsewhere in the world, and such responsibility shall include, without limitation, the locating, selecting, appointing, training and supervising a sufficient number of sales and rental agents to effectively perform its obligations hereunder. [Emphasis added.]
The first contract prohibited Geneva from being employed by any other developer in competition with Trafalgar in Dade, Monroe, Collier, Broward or Palm Beach counties. It required Trafalgar to designate to Geneva “from time to time” the areas to be sold and to assign to Geneva sales prices and terms for such properties to be sold. The contract also provided that
Trafalgar shall advise Geneva in writing as to the total amount of dwelling units available to be sold by Geneva during such sales period, which amounts shall be the actual number of such dwelling units to be built during such period for which Trafalgar has then obtained construction and permanent financing commitments. [Emphasis added.]
The intent of the parties, manifested by the terms of the contract, was to grant Geneva the exclusive right to sell and lease property developed by Trafalgar to any party during the term of the contract. That the total amount of units available to be sold by Geneva during a sales period was to be the actual number of units to be built by Trafalgar during the sales period can lead only to the conclusion that Geneva was granted the exclusive right to sell such units. See Law Realty v. Pagliarulo, 385 So.2d 1093 (Fla. 4th DCA 1980); Community Cablecasting Corp. v. Daniels & Associates, 215 So.2d 17 (Fla. 1st DCA 1968), cert. denied mem., 225 So.2d 533 (Fla. 1969). The court in Law Realty held that “other language [contained in a listing agreement] agreeing to refer all others interested in the property to the broker ...,” id. at 1094, created an exclusive right of sale agreement. In Community Cablecasting Corp. an addendum to a sales contract excluding the broker from receiving a commission on any sale made to a particular buyer manifested “a clear intent that [the broker] was granted an exclusive right to sell ... as distinguished from an exclusive agency contract authorizing it to find a purchaser for the property and be entitled to a commission only if it was the procuring cause of the sale or if the sale was made through another broker,” id. at 20. In the instant case the above-quoted contract provisions manifest an equally clear intent that Geneva was granted an exclusive right to sell the properties. As the court in Nicholas v. Bursley, 119 So.2d 722, 727 (Fla. 2d DCA 1960), said, “the term ‘exclusive’ must be considered along with all other words in the instrument in an attempt to determine the intent of the parties [and] ... all the circumstances must be considered.” The court in Nicholas held that an “ ‘exclusive right to sell’ must be clearly set forth in unequivocal language within the four corners of the contract in order to divest the owner of his inherent right to dispose of his own property,” id.
The contracts in the case sub judice, along with creating many other duties and obligations, unequivocally granted Geneva an exclusive right to sell. This contract and the second property management contract were components in an elaborate property development, marketing and management plan. It is clear that the parties to this contract intended that Geneva exclusively market and sell the property developed by Trafalgar. The clear meaning expressed in the contract should be enforced. See Board of Public Instruction of Dade County v. Fred Howland, Inc., 243 So.2d 221 (Fla. 3d DCA 1970), cert. denied mem., 248 So.2d 167 (Fla.1971). The trial court, therefore, erred in finding that the agreement created an exclusive agency to sell.
The second issue involved in this appeal is whether Geneva must show that it was ready, willing and able to perform under the contract that Trafalgar anticipatorily *394 breached. The trial court erred in that it did not even address this question. Instead the trial court found that as a matter of law Geneva was not ready, willing and able to perform.
In order for an anticipatory breach of a contract to give rise to a claim for damages the non-breaching party must show its ability to perform conditions precedent to performance by the breaching party. See Hospital Mortgage Group v. First Prudential Development Corp., 411 So.2d 181 (Fla.1982). Thus Geneva must show that it could have performed as a prerequisite to recovery under the contracts.[1] Whether Geneva was in fact ready, willing and able to perform is a question of fact which precludes final summary adjudication of the issue.
We reverse the finding of the trial court that the contracts granted Geneva an exclusive sales agency, hold as a matter of law that Geneva was granted an exclusive right to sell and remand the action to the trial court for a factual determination of whether Geneva was ready, willing and able to perform under the marketing contract following Trafalgar’s anticipatory breach.
Reversed and remanded with directions.
HENDRY, J., dissents.

. Geneva must only show that it could perform under the marketing contract because a paragraph of a rider to the management contract provides:
[A] breach of the sales contract shall be an automatic breach of this management contract and the termination of the sales contract shall automatically terminate this management contract.