468 So.2d 340 (1985)
CAMEL INVESTMENTS, INC., Appellant/Cross-Appellee,
v.
Orval R. WEBBER, Vivian A. Webber, Ronald K. Webber, and Sav-a-Ton Petroleum, Inc., Appellees/Cross-Appellants.
No. AY-96.
District Court of Appeal of Florida, First District.
April 15, 1985.
Rehearing Denied May 30, 1985.
*341 J. Michael Huey, William L. Hyde, and Geoffrey B. Schwartz of Akerman, Senterfitt & Eidson, Tallahassee, for appellant/cross-appellee.
Walter J. Smith of Smith, Grimsley, Remington, Kessler & Simpson, and Richard H. Powell of Estergren, Fortune, Anchors & Powell, Fort Walton Beach, for appellees/cross-appellants.
SHIVERS, Judge.
Appellant, Camel Investments, Inc., appeals the final judgment, raising as issues the amount and measure of damages, the trial court's failure to award attorney's fees, and the dismissal by directed verdict of Camel's claim for tortious interference with a business relationship. Appellees Orval and Vivian Webber cross-appeal the trial court's failure to award attorney's fees. We reverse as to damages and reverse the trial court's failure to award attorney's fees to Camel. We affirm the denial of attorney's fees to the Webbers, and affirm the dismissal of the claim of tortious interference.
On August 14, 1980, Camel Investments, Inc. (Camel) purchased from Orval and Vivian Webber, his wife (Webbers) Buchanan Oil Company d/b/a Webber Oil Company, which consisted of several retail gas stations and a wholesale oil distributorship. The Webbers received a cash downpayment of $250,000, and a note for the balance of $1,075,000, which expressly allowed Camel the right of offset as set forth in the purchase and sale agreement. The agreement provided that Camel could offset sums due by Camel to the Webbers under the note by amounts due by Webbers to Camel under the agreement.
As a part of the agreement the Webbers retained one retail station known as WOCO # 3. The Webbers agreed, in Paragraph 23 of the agreement, to purchase all their gasoline requirements from Camel, so long as Camel's price did not exceed by more than 2 cents per gallon the price available to the Webbers by other competitive suppliers. Paragraph 23 also provided that Camel was entitled to make a 2 cents per gallon profit on its sales to WOCO # 3.
The agreement prohibited the Webbers from competing with Camel in Okaloosa County in any way for a period of three years except by operating WOCO # 3. The agreement further provided for attorney's fees and costs for the "prevailing" party in the event of suit.
In March 1981, Ronald K. Webber, son of Mr. and Mrs. Webber, incorporated SAV-A-TON Petroleum, Inc., a petroleum distributor in competition with Camel in Okaloosa County. A portion of the initial cash investment and lines of credit with the petroleum suppliers were provided by Mr. and Mrs. Orval Webber. Beginning in April 1981, WOCO # 3 began purchasing a substantial amount of gasoline from SAV-A-TON. This led to Camel's withdrawing its credit card program, which in turn ultimately resulted in a meeting between Camel and the Webbers and their respective attorneys on September 21, 1981. In this meeting the parties came to an understanding that appeared to resolve the dispute until July of 1982.
By letter of July 28, 1982, the Webbers informed Camel they were going to purchase gasoline from another source and no longer wished to participate in the credit card plan. Camel responded by notifying the Webbers that they would begin offsetting $3,000 per month on the note payment, the amount that Camel calculated to be its loss of profits. From this point, the Webbers purchased almost all of their gas from SAV-A-TON.
The Webbers filed suit for the deficiency on the note. Camel answered and counterclaimed alleging breach of the "non-compete" clause and also breach of paragraph 23. Camel also sued Ronald K. Webber and SAV-A-TON Petroleum, Inc. for tortious interference with a business relationship.
*342 The trial court, sitting as the trier of fact, found that the Webbers had breached the covenant not to compete for the period of April 16, 1981 until August 14, 1983, when the non-competition period expired, and assessed damages for this at $17,500. The court further found that the Webbers violated paragraph 23 during the period of September 21, 1981 to January 30, 1983, when Camel ceased quoting prices to the Webbers. The court assessed damages for breach of paragraph 23 at $10,000. The court found the total amount of the offset taken by Camel (for the months August 1982 through October 1983) was $45,500, so the net due to the Webbers was $18,000. The judge directed a verdict against Camel on its claim against Ronald K. Webber and SAV-A-TON, and declined to award attorney's fees to either party.
As to the amount and measure of damages, the first issue raised by Camel is that the trial judge erred in failing to award Camel damages after January 30, 1983, the date Camel ceased quoting prices to the Webbers. The Webbers respond that Camel was required to furnish quotations to recover for breach of contract. However, Camel ceased quoting prices after they were faced with the Webbers' repudiation of their obligation to purchase gasoline for WOCO # 3 from Camel. When faced with the repudiation of an executory contract, the non-breaching party's duty to tender performance is excused. Hospital Mortgage Group v. First Prudential Development Corp., 411 So.2d 181 (Fla. 1982). The agreement is executory in that the term of the contract was 30 years. A Camel official testified that Camel was ready, willing, and able to perform at all times. This is a sufficient predicate to recovery. Morley v. Trafalgar Developers of Florida, Ltd., 455 So.2d 391 (Fla. 3d DCA 1984). Therefore, Camel should have been awarded damages for the period after January 30, 1983 as well.
The next issue raised by Camel is that it is entitled to a loss of profits of 2 cents per gallon. The trial court held that since the prices introduced into evidence fluctuated, and some were valid within the dictates of paragraph 23, that $10,000 was an adequate figure for loss of profits.
The Webbers maintain that under the final judgment Camel was awarded loss of profits for breach of the non-compete clause as well as for breach of paragraph 23.
The measure of damages for a breach of a non-competition agreement is the actual damages suffered as a result of the breach, which is generally loss of profits. 54 Am.Jur.2d, Monopolies, section 579 (1971). In the present case, the only damages proved by Camel were loss of profits, which would be the measure of damages. See Collier v. Crane Inspection and Certification Bureau, Inc., 382 So.2d 424 (Fla. 5th DCA 1980).
Camel is clearly entitled to damages for breach of the non-compete agreement as well as damages for breach of Paragraph 23. For the Webbers' breach of their covenant not to compete, Camel is entitled to recover damages for loss of profits incurred by Camel for sales made by SAV-A-TON in violation of the non-compete clause. These damages are those resulting from loss of profits because of sales by SAV-A-TON to WOCO # 3 as well as sales to others made in violation of the non-compete clause. The damages to Camel for their loss of profits on SAV-A-TON's sales to WOCO # 3 for violation of the covenant not to compete cannot duplicate loss of the same profits suffered by Camel during the identical time because of Webbers' purchases for WOCO #3 from SAV-A-TON instead of from Camel as they were required to do by Paragraph 23.
The trial court found that the Webbers violated the covenant not to compete from April 16, 1981 until August 14, 1983. The trial court found the Webbers breached Paragraph 23 for a period beginning September 21, 1981. The trial court found that on that date the parties met with their counsel and reached a satisfaction of all disagreements up to September 21, 1981. It appears the trial court concluded that *343 this satisfaction did not include damages from April 16, 1981 to September 21, 1981 for breach of the covenant not to compete, but this is not clear.
Camel is entitled to their profits as if the contract had been performed. Sampley Enterprises, Inc. v. Laurilla, 404 So.2d 841 (Fla. 5th DCA 1981). This amount may be determined if there is a reasonable basis for computation. Mori v. Matsushita Electric Corp. of America, 380 So.2d 461 (Fla. 3d DCA), cert. den., 389 So.2d 1112 (Fla. 1980). In the instant case the measure of damages for the Webbers' breach of Paragraph 23 would be 2 cents multiplied by the number of gallons of gasoline[1] that the Webbers purchased for WOCO #3 from SAV-A-TON after September 21, 1981, the date the parties reached an accord and satisfaction of prior breaches of paragraph 23. The trial court deemed, in awarding damages for breach of paragraph 23, that the proper measure of damages could not be obtained by multiplying 2 cents by the number of gallons, reasoning that some of the purchases by the Webbers from SAV-A-TON were legitimate, that is within the 2 cent margin, and that Camel's quotes would have at times produced a profit of less than 2 cents. However, since SAV-A-TON's prices were not those of a competitive supplier and the sales were a violation of the covenant not to compete, 2 cents per gallon is a proper measure of damages. In addition, Camel would be entitled to 2 cents per gallon for purchases the Webbers made from other sources that violated paragraph 23. This allows Camel recovery for the Webbers' breaches consistent with Camel's damages and commensurate with the benefit of the bargain that they lost. In addition, reassessment and computation of Camel's damages for Webbers' breach of the covenant not to compete need be made.
As to the attorney's fees, Camel argues that they prevailed under the agreement by establishing a breach by the Webbers, and if the appropriate measure of damages were used, they would be entitled to a net judgment. The Webbers assert that since they received a net judgment, they are the prevailing party and are entitled to attorney's fees, based upon the agreement and the note.
It is clear that the Webbers breached the agreement which prompted Camel to exercise its right of offset. The note clearly contains this right. Therefore, the Webbers are not entitled to recover attorney's fees under the note from Camel. Since it was established that the Webbers breached the agreement and that Camel is entitled to damages, Camel is the prevailing party. Kendall East Estates, Inc. v. Banks, 386 So.2d 1245 (Fla. 3d DCA 1980), Kirou v. Oceanside Plaza Condominium Association Corp., 425 So.2d 650 (Fla. 3d DCA 1983).
Finally, upon review of the record it appears that the trial judge's dismissal of the claim against Ronald K. Webber and SAV-A-TON was correct.
The record does not clearly substantiate the intent element as set out in Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126 (Fla. 1985).
We reverse and remand with instructions to assess damages in accordance with the opinion and to award costs and attorney's fees to Camel, pursuant to the agreement.
BOOTH, J., and TILLMAN PEARSON (Ret.), Associate Judge, concur.
NOTES
[1] The parties stipulated at trial that the term gasoline was intended and treated by the parties to include regular, unleaded and gasohol.